UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, and the STATE OF TEXAS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:05cv21 |
| CHEVRON U.S.A. INC., CHEVRON ENVIRONMENTAL MANAGEMENT CO., and CHEVRON PHILLIPS CHEMICAL COMPANY, LP | ) ) ) ) ) | |
| Defendants. | ) ) | |

**CONSENT DECREE**

## TABLE OF CONTENTS

I. BACKGROUND ............................................................................................ 1

II. JURISDICTION AND VENUE ..................................................................... 5

III. DEFENDANTS ............................................................................................ 6

IV. DEFINITIONS ............................................................................................. 6

V. APPLICABILITY OF CONSENT DECREE............................................... 9

VI.  NATURAL RESOURCE DAMAGE RESTORATION REQUIREMENTS ...................... 12

VII. PAST COSTS REIMBURSEMENT ........................................................... 16

VIII. FUTURE COSTS REIMBURSEMENT ..................................................... 19

IX. TRUSTEES' AND SETTLING DEFENDANTS' CONTACT PERSONS .......................... 20

X. FORCE MAJEURE ..................................................................................... 25

XI. DISPUTE RESOLUTION ........................................................................... 28

XII. STIPULATED PENALTIES ....................................................................... 31

XIII. COVENANTS NOT TO SUE BY THE UNITED STATES
      AND THE STATE OF TEXAS ................................................................. 35

XIV. RESERVATION OF RIGHTS BY THE UNITED STATES
      AND THE STATE OF TEXAS ................................................................. 37

XV. COVENANTS BY SETTLING DEFENDANTS ........................................ 39

XVI. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION .................. 40

XVII. CERTIFICATION ..................................................................................... 41

XVIII. ACCESS .................................................................................................. 41

XIX. VOIDABILITY .......................................................................................... 47

XX. RETENTION OF JURISDICTION ........................................................... 48

XXI. MODIFICATION ....................................................................................... 48

i

XXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ..................................... 48

XXIII. TERMINATION  .......................................................................................................... 48

XXIV. SIGNATORIES/SERVICE .......................................................................................... 49

XXV.  FINAL JUDGMENT ................................................................................................... 49

## ATTACHMENTS

ATTACHMENT A:   Implementation and Monitoring Plan for Restoration Projects

ATTACHMENT B:   Map Depicting the Port Arthur Refinery Site (formerly owned by Chevron U.S.A. Inc., and known as the Chevron Port Arthur Refinery) Located at 1801 South Gulfway Drive in Port Arthur, Jefferson County, Texas, and Showing the Assessed Areas

ATTACHMENT C:   Access Agreement between the State of Texas, Chevron U.S.A. Inc., and Chevron Environmental Management Company

ATTACHMENT D:   Compensation Available to Offset the Compensatory Ecological Restoration

## CONSENT DECREE

This Consent Decree is made and entered into by and between the United States of America ("United States"), on behalf of the Under Secretary for Oceans and Atmosphere of the National Oceanic and Atmospheric Administration ("NOAA") acting on behalf of the Secretary of Commerce, and the Secretary of the Department of the Interior ("DOI"); and the State of Texas on behalf of the Texas Commission on Environmental Quality ("TCEQ"), the Texas Parks and Wildlife Department ("TPWD"), and the Texas General Land Office ("GLO") (collectively, the "Trustees"); and Chevron U.S.A. Inc., Chevron Environmental Management Company, and Chevron Phillips Chemical Company, LP (collectively, the "Settling Defendants").

I. **BACKGROUND**

    A.    The Port Arthur Refinery (the "Refinery")(formerly owned by Chevron U.S.A. Inc. prior to its sale to Clark Refining & Marketing, Inc. in 1995), which encompasses approximately 4,000 acres, is located at 1801 South Gulfway Drive in Port Arthur, Jefferson County, Texas. A refinery has been continuously operated at this location since the early 1900s.

    B.    In June 1997, Chevron U.S.A. Inc., Clark Refining & Marketing, Inc. (now known as The Premcor Refining Group, Inc.), and the Texas Natural Resources Conservation Commission (now known as TCEQ), acting pursuant to its authority under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., entered into an Agreed Order requiring that environmental investigations be conducted on and adjacent to the Refinery and that certain corrective measures be undertaken for high priority areas at the Refinery and adjacent areas (the "Site"). The Agreed Order also required the completion of a RCRA facility investigation of solid waste management units and other areas of concern at the Site. These activities are continuing at the Site.

C.      In June 1999, using data gathered by Chevron U.S.A. Inc. during various

investigations and studies at the Site, including those required under the Agreed Order, the

Trustees and Chevron U.S.A. Inc. began a cooperative assessment to evaluate potential injury to,

loss or destruction of natural resources and resource services at the Site resulting from historical

releases of hazardous substances and/or oil at the Site.  The data initially considered by the

Trustees in their assessment of the Site was comprised of chemical data from soil, surface water,

sediment, and groundwater samples and biota tissue and biological monitoring data including,

but not limited to, bird monitoring data.  The assessment showed that hazardous substances

including, but not limited to, polycyclic aromatic hydrocarbons ("PAHs") consisting of 2-

methylnaphthalene, acenaphthene, acenaphthylene, anthracene, benzo(a)anthracene,

benzo(a)pyrene, chrysene, dibenz(a,h)anthracene, fluoranthene, fluorene, napthalene,

phenanthrene, and pyrene; lead; chromium; and other metals were present in soil, surface water,

sediments, and groundwater at the Site.  Based on that assessment, the Trustees have determined

that the release of hazardous substances and/or oil at the Site caused Natural Resource Damages

in areas at the Site, including but not limited to, the open water, sediments, wetlands, and

terrestrial habitats, to birds, terrestrial receptors, benthic aquatic invertebrates, and alterations in

benthic invertebrate community.

D.  The Trustees' assessment of these injuries to natural resources, including their

estimates of interim service losses, and the restoration projects proposed to compensate for those

losses are identified in the Final Restoration Plan and Environmental Assessment for the

Chevron/Port Arthur Refinery Site. ("Restoration Plan"), dated September 10, 2004.

E.      In December 1999, Chevron U.S.A. Inc. performed an emergency restoration

project at the State-owned J.D. Murphree Wildlife Management Area ("WMA") located near the

Site.  For the emergency restoration project, Chevron U.S.A. Inc. provided pumps and fuel to

pump water into impoundments at the J.D. Murphree WMA in order to provide habitat and

shelter for migratory birds during severe drought conditions.  In the Restoration Plan, the

Trustees have offset the Natural Resource Damages at the Site by the estimated benefit to the

environment resulting from this emergency restoration project.

F.      The Restoration Plan specifies restoration projects to be implemented by the

Settling Defendants to restore the natural resources injured by releases of hazardous substances

and/or oil at the Site.  The Restoration Plan specifies three restoration projects to be undertaken

in state wildlife management areas that are owned and managed by TPWD:  the Jefferson

County ("J.C.") Wetlands Restoration Project, the Old River South ("ORS") Water Control

Structures Restoration Project, and the ORS Marsh Complex and Wet Prairie Restoration

Project.  For the J.C. Wetlands Restoration Project, the Settling Defendants will construct water

control structures and levees that will be used by the State of Texas to restore hydrology and

historical salinity gradients to the J. D. Murphree WMA.  For the ORS Water Control Structures

Restoration Project at the Lower Neches Wildlife Management Area, the Settling Defendants

will construct a low water plug and eight culverts to be used by the State of Texas to better

manage and improve impoundments used for bird and wildlife habitat.  For the ORS Marsh

Complex and Wet Prairie Restoration Project at the Lower Neches Wildlife Management Area,

the Settling Defendants will create eighty-five (85) acres of marsh and thirty (30) acres of coastal

wet prairie to enhance productivity of the ecosystems utilized by birds, fish, and other creatures.

Page 3 of 56

G.    Contemporaneously with the lodging of this Consent Decree, the United States, on behalf of DOI and NOAA, and the State of Texas, on behalf of TCEQ, TPWD, and GLO, filed a Complaint in this matter against Settling Defendants pursuant to Sections 107 and 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(b); Section 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1321; Section 1002(b)(2)(A) of the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2702(b)(2)(A); and the Oil Spill Prevention and Response Act ("OSPRA"), Tex. Nat. Res. Code Ann., § 40.107 and 40.203.  In the Complaint, the United States and the State of Texas seek (1) Natural Resource Damages for the injury, loss or destruction of natural resources, including the interim loss of the services or use of such resources, resulting from the release of hazardous substances and/or oil at the Site, (2) past costs incurred by the Trustees in assessing these Natural Resource Damages based on releases of hazardous substances and/or oil at the Site, and (3) future restoration costs to be incurred by the Trustees in overseeing and monitoring the Restoration Projects to be undertaken by Settling Defendants as outlined in this Consent Decree.

H.    This Consent Decree is a settlement of a contested matter, and neither payment nor the acceptance of any consideration represents an admission of liability or responsibility by any Party.  In signing this Decree, the Settling Defendants deny any and all legal and equitable liability and, except as provided in Paragraph 55, reserve all defenses under federal, state or local statute, regulation or common law for any Natural Resource Damages arising from or pertaining to any releases or threatened releases of hazardous substances and/or discharges of hazardous substances and/or oil at the Site.  Pursuant to Section 122(d)(1)(B) of CERCLA, 42 U.S.C. § 9622(d)(1)(B), entry of this Consent Decree is not an acknowledgment or admission by the

Settling Defendants that the release or threatened release of a hazardous substance constitutes an imminent and substantial endangerment to public health or welfare or the environment. The Settling Defendants do not admit and retain the right to controvert any of the factual or legal statements or determinations made herein in any judicial or administrative proceeding except in an action to enforce this Consent Decree. The Settling Defendants agree to the Court's jurisdiction to enter and enforce this Consent Decree, and agree in any such enforcement proceeding not to challenge the terms of this Decree.

I.       The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated in good faith and implementation of this Consent Decree will expedite the restoration of natural resources and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, it is ORDERED, ADJUDGED AND DECREED as follows:

## II.   JURISDICTION AND VENUE

1.       The Parties stipulate that the Court has personal jurisdiction over the Parties and has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b), and that venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b). Solely for the purposes of this Consent Decree, the Settling Defendants waive all objections and defenses that they may have to the personal jurisdiction of the Court, to venue in this District, and to service of process.

### III.   DEFENDANTS

2.      Chevron U.S.A. Inc. means Chevron U.S.A. Inc. (formerly known as "Gulf Oil Corporation"), a Pennsylvania corporation, its successors and assigns.

3.      Chevron Environmental Management Company is a California corporation which is registered to conduct business in the State of Texas.

4.      Chevron Phillips Chemical Company, LP is a Delaware limited partnership which is registered to conduct business in the State of Texas.

### IV.   DEFINITIONS

5.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA, 42 U.S.C. § 9601 et seq., or in regulations promulgated under CERCLA, 43 C.F.R. Part 11 and 40 C.F.R. Part 300, shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the attachments attached hereto and incorporated hereunder, the following definitions shall apply:

A.      "CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq.

B.      "Chevron U.S.A. Inc." means Chevron U.S.A. Inc. (formerly known as Gulf Oil Corporation), a Pennsylvania corporation, and its successors and assigns.

C.      "Consent Decree" means this document entitled "Consent Decree," all attachments thereto, and any modification made pursuant to Section XXI (Modification).

D.      "CWA" means the Clean Water Act, 33 U.S.C. § 1251 et seq.

E.      "Date of Entry" means the date on which either this Consent Decree or an order entering this Consent Decree is filed with the Clerk of Court after the United States

and State of Texas have moved for entry and the District Judge has signed the Consent Decree.

      F.      "Date of Lodging" means the date this Consent Decree is lodged with the Clerk of Court.

      G.      "Federal Trustees" means DOI and NOAA.

      H.      "Future Costs" means the reasonable costs which the Trustees have incurred or will incur after September 30, 2003, in connection with planning for restoration actions to compensate for such injuries and losses, and the implementation, monitoring, and completion of the Restoration Projects contemplated by this Consent Decree.  Such costs include administrative costs and other costs or expenses associated with providing for public participation which are incurred incident to or in support of the assessment and restoration planning process.  Such costs also include administrative costs and other costs or expenses which are incurred to provide for, carry out or support the activities or responsibilities of the Trustees in overseeing implementation of the Restoration Projects.

      I.      "Implementation Plan" means the Implementation and Monitoring Plan for the Restoration Projects, attached hereto to as Attachment A.

      J.      "Natural Resource Damages" means the damages for injury to, destruction of, or loss of natural resources, including the reasonable cost of assessing such injury, destruction, or loss that result from the release of hazardous substances and/or the discharge of hazardous substances and/or oil at the Site, including due to response actions.  "Natural Resource Damages" includes, but is not limited to, natural resource damages recoverable under CERCLA Section 107(a)(C), 42 U.S.C. § 9607(a)(C); CWA

Section 311(f), 33 U.S.C. § 1321(f)(4); OPA Section 1002(b)(2)(A), 33 U.S.C.

§ 2702(b)(2)(A); and OSPRA, Tex. Nat. Res. Code Ann., §§ 40.107(c)(7)(F) and

40.203(b), and common law claims that have been subsumed by those statutes.

    K.    "Oil" means the definition prescribed by Section 1001(23) of OPA,

33 U.S.C. § 2701(23) and Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

    L.    "OPA" means the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.

    M.    "OSPRA" means the Oil Spill Prevention and Response Act, Tex. Nat.

Res. Code Ann., § 40.001 et seq.

    N.    "Paragraph" means a portion of this Consent Decree identified by an

Arabic numeral.

    O.    "Parties" means the United States of America, the State of Texas, and the

Settling Defendants.

    P.    "Past Costs" means the reasonable costs incurred by the Trustees in

assessing the natural resources actually or potentially injured, destroyed, or lost as a

result of releases of hazardous substances and/or discharges of hazardous substances

and/or oil at the Site, including due to response actions, and in identifying and planning

for restoration actions to compensate for such injuries and losses prior to October 1,

2003.

    Q.    "Released Parties" means Chevron Environmental Management Company

and Chevron Phillips Chemical Company, LP.

    R.    "Restoration Plan" means the plan entitled Final Restoration Plan and

Environmental Assessment for the Old Gulf Oil Refinery, Port Arthur, Jefferson County,

Texas, dated September 10, 2004.

S.      "Restoration Projects" means the restoration actions comprised of the ORS Water Control Structures Restoration Project, the ORS Marsh Complex and Wet Prairie Restoration Project, and the J.C. Wetlands Restoration Project, as defined and described in Attachment A.

T.      "Section" means a portion of this Consent Decree identified by an uppercase Roman numeral.

U.      "Settling Defendants" means Chevron U.S.A. Inc.; Chevron Environmental Management Company; and Chevron Phillips Chemical Company, LP.

V.      "Site" means the Port Arthur Refinery (formerly owned by Chevron U.S.A. Inc., and currently known as the Chevron Port Arthur Refinery) located at 1801 South Gulfway Drive in Port Arthur, Jefferson County, Texas, and the adjacent areas assessed by the Trustees, as shown on the map attached as Attachment B.

W.      "State of Texas" or "State" means the State of Texas, its agencies and instrumentalities, including TCEQ, TPWD, and GLO.

X.      "State Trustees" means TCEQ, TPWD, and GLO.

Y.      "Trustees" means the Federal Trustees and State Trustees.

## V.      APPLICABILITY OF CONSENT DECREE

6.      This Consent Decree applies to and is binding upon the United States and the State of Texas and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's rights and responsibilities under this Consent Decree.

7.     Settling Defendants shall provide written notice of the Consent Decree to each person representing them with respect to the Restoration Project and to all contractors and subcontractors hired to perform any portion of the Restoration Projects required by the Consent Decree. Settling Defendants shall be fully responsible for ensuring that its contractors and subcontractors perform the Restoration Projects contemplated herein in accordance with this Consent Decree.

8.     Consent Decree Not a Permit. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any Federal or State statute or regulation. The United States and the State of Texas do not, by their consent to this Consent Decree, warrant or aver in any manner that the Settling Defendants' compliance with this Consent Decree will constitute or result in compliance with the requirements of any Federal, State, and local laws and regulations which may be applicable to the implementation of any Restoration Project or other activities required by the terms of this Consent Decree.

9.     Commitments by Settling Defendants.

A.     The obligations of Settling Defendants to implement the requirements of this Consent Decree are joint and several. In the event of the insolvency or other failure of any one or more Settling Defendants to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

B.     Chevron U.S.A. Inc. shall have primary responsibility to fulfill all of the requirements of this Consent Decree including, but not limited to, financing and performing the Restoration Projects in accordance with this Consent Decree and reimbursing the United States and the State of Texas for Past Costs and Future Costs as provided in this Consent Decree. In the event that Chevron U.S.A. Inc. fails to perform

one or more of its obligations under this Consent Decree, the United States and the State

of Texas shall give joint notice to all Settling Defendants of their intention to seek

performance under the Consent Decree by the Released Parties.  The notice shall state the

specific requirements under the Consent Decree that Chevron U.S.A. Inc. has failed to

perform and the schedule under which such performance must be completed.  If Chevron

U.S.A. Inc. has not performed the specific requirements within  thirty (30) days of such

notice, or reached agreement with the Trustees on a schedule for performance, or invoked

Dispute Resolution pursuant to Section XI (Dispute Resolution), one or more of the

Released Parties shall perform such obligation(s) if the United States and/or the State of

Texas so requests in writing.  If Chevron U.S.A. Inc. has invoked Dispute Resolution

pursuant to Section XI (Dispute Resolution) with regard to the obligation(s) at issue, the

Trustees may not seek performance of the obligation(s) by the Released Parties until the

dispute resolution process has been completed.  In the event that the United States and/or

the State of Texas invoke their right to request that the Released Parties perform Chevron

U.S.A. Inc.'s obligations under this Consent Decree, the Released Parties shall assume all

rights and responsibilities of Chevron U.S.A. Inc. under this Consent Decree.  Invocation

by the United States and/or the State of Texas of their right to request that the Released

Parties perform Chevron U.S.A. Inc.'s obligations under this Consent Decree, shall not

excuse performance by Chevron U.S.A. Inc. and shall not waive the United States' and

the State of Texas' right to enforce the requirements of this Consent Decree against

Chevron U.S.A. Inc.

C. The Released Parties shall have the same rights and protections afforded to

Chevron U.S.A. Inc. under this Consent Decree.

10.    Responsibility for Compliance.  Notwithstanding any action by the United States and the State of Texas, including, without limitation, their issuance of the Restoration Plan or the review and approval of any design, plan, report, and other information or action formulated by the Settling Defendants under this Consent Decree, the Settling Defendants are and shall remain responsible for compliance with all terms and requirements of this Consent Decree, except as this Decree may be modified pursuant to Section XXI (Modification).

11.    The United States and the State of Texas may take any and all legal or administrative actions necessary to enforce the terms of this Consent Decree.  In the event that the United States and the State of Texas take legal or administrative actions to enforce this Consent Decree and such action is successful, the Settling Defendants shall pay all reasonable costs incurred by the United States and the State of Texas related to this action including, but not limited to, enforcement costs, attorneys fees and, if the action relates to non-payment of past or future costs, interest accruing on any unpaid balance, as computed in Paragraph 18.D below.

## VI.    NATURAL RESOURCE DAMAGE RESTORATION REQUIREMENTS

12.    This Consent Decree provides the terms upon which the United States, the State of Texas, and the Settling Defendants agree to settle the claims of the United States and the State of Texas for Natural Resource Damages which resulted from releases of hazardous substances and/or discharges of hazardous substances and/or oil at the Site.

13.    The Settling Defendants shall restore or replace the natural resources and the natural resource services injured or lost by timely completing the Restoration Projects in accordance with the terms of this Consent Decree.

14.    Restoration Projects Planning and Implementation – All permits, right-of-ways, access agreements, and other documents necessary to implement the Restoration Projects shall

be obtained by the Settling Defendants at their expense, and the Settling Defendants shall

comply with all applicable Federal, State, and local laws in implementing the Restoration

Projects.

15.     <u>Access and Use Agreement</u> – TPWD, Chevron U.S.A. Inc., and Chevron

Environmental Management Company have entered into an access agreement in order to

facilitate the Settling Defendants' access to property owned by the State of Texas which will be

used for the Restoration Projects.  This access agreement is attached to this Consent Decree as

Attachment C.

16.     <u>Project Review Group</u>

A.  A Project Review Group, consisting of one representative each from NOAA,

DOI, TCEQ, TPWD, and GLO, has been established.  The Trustee representatives have

been identified in Paragraph 21.  In addition, the representative of the Settling

Defendants identified in Subparagraph B shall serve as a non-voting, <u>ex-officio</u> member

of the Project Review Group.  The Project Review Group shall act on behalf of the

Trustees on all matters related to the Restoration Projects under the terms of this Decree,

including, but not limited to the following:

i.      overseeing the implementation of the Restoration Projects pursuant

to  the Implementation Plan (Attachment A);

ii.     certifying that the Restoration Projects are constructed in

accordance with the requirements of the Implementation Plan

(Attachment A);

Page 13 of 56

iii.    monitoring the ORS Marsh Complex and Wet Prairie Restoration

Project post-construction in accordance with the requirements of

the Implementation Plan (Attachment A);

iv.    determining appropriate action(s) to ensure that performance

criteria will be met in accordance with the requirements of the

Implementation Plan (Attachment A);

v.    certifying the completion of the ORS Marsh Complex and Wet

Prairie Restoration Project in accordance with the requirements of

the Implementation Plan (Attachment A); and

vi.    undertaking any other actions necessary to ensure the Settling

Defendants' compliance with the restoration activities required by

the Consent Decree.

B.  Not later than 30 days after the Date of Entry, the Settling Defendants shall

designate an individual to serve as a non-voting, ex-officio member of the Project

Review Group, to act as the Project Review Group's point-of-contact with the Settling

Defendants, and to coordinate the Settling Defendants' activities in implementing the

Restoration Projects in accordance with this Consent Decree.

17.    Ecological Services Analysis –The Settling Defendants may, if approved by the

Executive Director of the Texas Commission on Environmental Quality, utilize the ecological

services analysis ("ESA") approach, as provided for under the Texas Risk Reduction Program at

30 Tex. Admin. Code § 350.33(a)(3)(B) to address ecological risks that may exist at the Site

through the provision of compensatory restoration.  The ESA may include ecological risk

management options that consider compensatory ecological restoration ("CER").  The Federal

Trustees have elected not to participate in the review or approval of an ESA and any related CER for the Site. The State Trustees agree that the amount and type of such CER, if any, will not be determined for an area until an ESA for that area has been completed and approved. The State Trustees also agree that the Natural Resource Damage compensation provided under this Consent Decree may be applied toward satisfaction of any CER that may be required in an approved ESA for this Site, subject to the following limitations:

A.     Compensation for Natural Resource Damages which may be used to offset the CER required pursuant to an approved ESA will be limited to the areas and amount of compensation as set forth in Attachment D.

B.     Compensation for Natural Resource Damages which may be used to offset the requirement for CER required pursuant to an approved ESA will be limited as set forth in Attachment D to the natural resources services losses incurred during the same time period or duration as that of the residual ecological risk specified in the ESA for a given area.

C.  In the event that a response action (remove, decontaminate or control) is undertaken in any of the areas listed in Attachment D, the available compensation for that area as of the date the response action is completed may be applied or used as compensation for other listed areas provided that the available compensation exceed any injury that may occur as a result of the response action.

D.     Assessment areas eligible for an ESA pursuant to this Paragraph are included as natural resource injury assessment areas in Attachment D to this Consent Decree; and

E.      In no event shall the completion and approval of an ESA require a reduction in the total amount of Natural Resource Damage compensation required by this Consent Decree.

## VII.   PAST COSTS REIMBURSEMENT

18.      The Trustees have expended time, funds and resources in assessing damages for the natural resource injuries and losses that resulted from the releases of hazardous substances and/or discharges of hazardous substances and/or oil at the Site.  The Settling Defendants shall reimburse each Trustee for its Past Costs and shall reference the "Chevron/Port Arthur Natural Resource Restoration Settlement" as follows:

A.      As to NOAA, the Settling Defendants shall make payment in the amount of $111,843.73, which shall be sent by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures within 30 days of receipt of wiring instructions from the United States Attorney's Office for the Eastern District of Texas.  Any payment received by the Department of Justice after 4:00 p.m. Eastern Time shall be credited on the next business day. The payment shall reference "United States and the State of Texas v. Chevron U.S.A. Inc. et al.; USAO File Number 2003V01192;  DOJ case number 90-11-2-07542/1; Clark/Chevron Refinery – NOAA's DARRF."

Notice of the payment also shall be sent to the following:

NOAA/NOS/OR&R
ATTN:  Kathy Salter
SSMC 4, Room 9331
1305 East West Highway
Silver Spring, MD  20910-3281

Jason S. Forman, Esq.
NOAA Office of General Counsel
1315 East West Highway, Room 15107
Silver Spring, MD  20910

Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Dept. of Justice
P.O. Box 7611
Washington, DC  20044-7611
re:  DJ# 90-11-2-07542/1

B.      As to DOI, the Settling Defendants shall make payment in the amount of

$38,042.08, which shall be sent by FedWire EFT to the U.S. Department of Justice

account in accordance with current EFT procedures within 30 days of receipt of wiring

instructions from the United States Attorney's Office for the Eastern District of Texas.

Any payment received by the Department of Justice after 4:00 p.m. Eastern Time shall be

credited on the next business day. The payment shall reference "USAO File Number

2003V01192, DOJ case number 90-11-2-07542/1, Clark/Chevron Refinery – DOI."

Notice of the payment also shall be sent to the following:

Department of the Interior
Natural Resource Damage Assessment and Restoration Program
Attn: Restoration Fund Manager
1849 C Street, NW
 Mailstop 4449
Washington, D.C.  20240

Martin Steinmetz, Esq.
Office of the Field Solicitor
U.S. Department of the Interior
7906 E. 33rd St., Suite 100
Tulsa, OK  74145

Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Dept. of Justice
P.O. Box 7611
Washington, DC  20044-7611
re:  DJ# 90-11-2-07542/1

C.      As to the State of Texas, the Settling Defendants shall pay the State of

Texas $62,784.16 in the form of a certified check made payable to the "State of Texas."

The check shall bear the identifying number "AG# 01-1467875."  The payment shall be

mailed to:

Chief
Natural Resources Division
Texas Attorney General's Office
P.O. Box 12548
Austin, TX  78711

A copy of the check shall be sent to the State Trustee contacts identified in Paragraph 21.

D.      In the event that any payments required by this Paragraph are not made by

the thirtieth (30th) day after the Date of Entry, the Settling Defendants shall pay interest

on the unpaid balance.  Interest shall begin to accrue commencing on the thirty-first

(31st) day after the Date of Entry and continue to accrue through the date of payment.  In

accordance with 42 U.S.C. § 9607(a), interest shall accrue at the rate specified for

interest on investments of the Hazardous Substance Superfund established under

Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of

each year.  All accrued interest shall be paid at the time the principal amount of Past

Costs is paid.

## VIII.   FUTURE COSTS REIMBURSEMENT

19.      The Trustees will continue to incur Future Costs.

20.      The Settling Defendants shall reimburse each Trustee for its Future Costs within 90 days of receipt of a cost summary of each Trustee's actual costs and expenses.  To the extent that the Lead Administrative Trustee has received the information from the Trustees, the Lead Administrative Trustee shall compile, prepare, and send the cost summary to Chevron U.S.A. Inc.  If a Trustee's Future Costs are not included in the Lead Administrative Trustee's cost summary, the excluded Trustee may submit a separate cost summary to Chevron U.S.A. Inc. The cost summary shall provide the hours worked by the Trustees and the expenses incurred. Such Future Costs will be billed periodically, but no more often than once per year for each Trustee, and no longer than once every two (2) years, and shall be paid in the same manner as described in Paragraph 18 above.  Settling Defendants shall be responsible for determining the appropriate wiring instructions in order to make the required payments to the Federal Trustees. In the event that payments required by this Paragraph are not made within sixty (60) days of the Settling Defendants' receipt of the cost summary, the Settling Defendants shall pay interest on the unpaid balance.  Interest shall accrue at the interest rate specified in Paragraph 18.D commencing on the sixty-first (61st) day after the Settling Defendants' receipt of the cost summary and shall continue to accrue through the date of payment.  Settling Defendants shall not be obligated to reimburse the Trustees for any cost or expense incurred over two (2) years prior to the date of receipt of that cost summary.

## IX.   TRUSTEES' AND SETTLING DEFENDANTS' CONTACT PERSONS

21.   <u>Project Review Group: Trustees</u> –Each Trustee hereby respectively designates the

following persons as its representative for receipt of information and notices required or

occasioned under this Consent Decree and as its member of the Project Review Group:

A.   For NOAA:      Primary Contact:

Ron Gouguet
Chief CRC
NOAA/NOS/OR&R/CPRD
7600 Sand Point Way NE
Seattle, WA  98115

Tel:  (206) 526-6938
Fax: (206) 526-6865
Email: <u>Ron.Gouguet@noaa.gov</u>

B.   For DOI:      Primary Contact:

Ken Rice
Fish & Wildlife Service
Corpus Christi Ecological Services
C/O TAMU-CC, Campus Box 338
6300 Ocean Drive
Corpus Christi, Texas 78412

Tel:  (361) 994-9005
Fax: (361) 994-8262
Email: <u>Kenneth_Rice@fws.gov</u>

Alternate Contact:

Tammy Ash
Fish & Wildlife Service
Corpus Christi Ecological Services
C/O TAMU-CC, Campus Box 338
6300 Ocean Drive
Corpus Christi, Texas 78412

Tel:  (361) 994-9005
Fax: (361) 994-8262
Email: Tammy_Ash@fws.gov

C.    For TCEQ:                    Primary Contact:

Richard Seiler, MC-142
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX  78711-3087

Tel:  (512) 239-2523
Fax: (512) 239-4814
Email: RSEILER@tceq.state.tx.us

D.    For TPWD:                    Primary Contact and Lead Administrative Trustee:

Andy Tirpak
Texas Parks and Wildlife Department
1502 Pine Drive (FM 517)
Dickinson, Texas 77539

Tel:  (281) 534-0137
Fax: (281) 534-0122
Email: andy.tirpak@tpwd.state.tx.us

Alternate Contact:

Don Pitts
Texas Parks and Wildlife Department
4200 Smith School Road
Austin, Texas 78744

Tel:  (512) 912-7154
Fax: (512) 912-7160
Email: don.pitts@tpwd.state.tx.us

E.  For GLO:                       Primary Contact:

Jim Weatherford
Texas General Land Office
P.O. Box 12873
Austin, Texas 78711-2873

Tel:  (512) 463-2572
Fax: (512) 475-0680
Email: Jim.Weatherford@glo.state.tx.us

22.    Project Review Group:  Settling Defendants –Settling Defendants hereby

respectively designate the following individuals as its representative for receipt of information

and notices required or occasioned under this Consent Decree and as its ex-officio, non-voting

member of the Project Review Group:

A.    For Chevron U.S.A. Inc.        Bob Gondek
      and Chevron Env. Mgm't       Site Manager
      Co.:                          Chevron Environmental Management Company
                                    5959 Corporate Drive, Suite 3500, Rm 3671
                                    Houston, Texas 77036

                                    Tel: (713) 219-5230
                                    Cell: (713) 899-3930
                                    Fax: (713) 219-5313
                                    Email: GOND@Chevrontexaco.com

                                    Peter Samuels
                                    Ecological Lead
                                    Chevron Environmental Management Company
                                    4800 Fournace Place, Room C-320D
                                    Bellaire, Texas 77401

                                    Tel: (713) 432-6469
                                    Fax: (713) 432-2234
                                    Email:  pesa@Chevrontexaco.com

B.    For Chevron Phillips          Greg Hanggi
      Chemical Co.:                 General Manager, EH&S
                                    Chevron Phillips Chemical Company, LP
                                    10001 Six Pines Drive
                                    The Woodlands, Texas 777380

                                    Tel: (832) 813-4409
                                    Fax: (832) 813-4680
                                    Email: HANGGIG@cpchem.com

23.     Any Trustee or Settling Defendant may change the address and the person

designated under Paragraphs 21 or 22 by communicating such changes in writing to the other

Parties.

24.     <u>Other Contacts: State</u>

A.     The Settling Defendants shall provide notice of all payments, whether for

Past Costs, Future Costs, interest, or stipulated penalties; copies of notice

contesting costs; copies of written documents, including notices and reports,

pertaining to force majeure; and copies of written documents, including notices

and reports, pertaining to dispute resolution to the State Trustees at the addresses

specified below:

Caroline Sweeney
Litigation Division, MC-175
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX  78711-3087

Tel:  (512) 239-0665
Fax: (512) 239-0606
Email: csweeney@tceq.state.tx.us

Raenell Silcox
Texas Parks and Wildlife Department
4200 Smith School Road
Austin, Texas 78744

Tel: (512) 912-7152
Fax: (512) 912-7160
Email: raenell.silcox@tpwd.state.tx.us

Thomas R. Thompson
Staff Attorney
Texas General Land Office
Legal Services
Stephen F. Austin Bldg.  Rm. 630
1700 N. Congress Ave.
Austin, Texas

Tel: 512 475-3786
Fax: 512 463-6311
Email: tr.thompson@glo.state.tx.us

The State Trustees may change the persons designated under this Subparagraph by submitting

written notice to all Parties.

B.      The Settling Defendants shall provide notices invoking force majeure and

dispute resolution to the Texas Office of the Attorney General at the address specified

below:

Albert Bronson
Assistant Attorney General
Texas Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, TX  78711-2548

The Texas Office of the Attorney General may change the person designated under this

Subparagraph by submitting written notice to all Parties.

25.      Other Contacts: Federal.  The Settling Defendants shall provide notice of all

payments, whether for Past Costs, Future Costs, interest, or stipulated penalties; copies of notice

contesting costs; copies of written documents, including notices and reports, pertaining to force

majeure; and copies of written documents, including notices and reports, pertaining to dispute

resolution to the United States at the addresses specified below.

A.   As to the United States Department of Justice:

Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
DJ # 90-11-2-07542/1

B.   As to NOAA:

Sheila O'Brien
Office of General Counsel
National Oceanic & Atmospheric Administration
9721 Executive Center Drive–Room 137
St. Petersburg, Florida 33702

C.   As to DOI:

Martin Steinmetz, Esq.
Office of the Field Solicitor
U.S. Department of the Interior
7906 E. 33rd St., Suite 100
Tulsa, OK  74145

The United States may change the persons designated under this Paragraph by submitting written

notice to all Parties.

26.   All notices and submissions shall be considered effective upon receipt by mail,

unless otherwise provided in this Consent Decree.  All such notices and submissions shall be sent

by first-class United States mail.  Submission of written notice by mail as specified in this Section

shall constitute complete satisfaction of any written notice requirement of the Consent Decree

with respect to the Parties.

## X.   FORCE MAJEURE

27.   "Force majeure," for the purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of the Settling Defendants, of any entity controlled by the

Settling Defendants, or of the Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Settling Defendants' best efforts to fulfill the obligation except the obligations to make payments described in Sections VII (Past Cost Reimbursement) and VIII (Future Cost Reimbursement) of this Consent Decree. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using the best efforts to anticipate any potential force majeure event and best efforts to address the effects of the potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force majeure," does not include financial inability to complete a Restoration Project, changes in the cost of a Restoration Project, or a failure to satisfy the requirements of the Implementation Plan.

28.     If any circumstance occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by force majeure, the Settling Defendants shall orally notify (voice mails or messages are not acceptable) the Lead Administrative Trustee identified in Paragraph 21 (or any other Project Review Group Trustee representative if the Lead Administrative Trustee is unavailable) within 48 hours of the time that the Settling Defendants first knew or should have known that the circumstances might cause a delay. Within 5 business days thereafter, the Settling Defendants shall provide in writing to the members of the Project Review Group a detailed description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay; the Settling Defendants' rationale for attributing such a delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such